IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Glenn S. Horen,           Case No. 3:12CV2224

    Plaintiff

    v.          **ORDER**

Board of Education of the
City of Toledo Public School District,

    Defendant


    This is another in a series of cases brought on behalf of a multi-handicapped minor child, DH.[1] All the cases involve, as this one does, the contention that the defendant Board of Education of the City of Toledo [Ohio] Public Schools (TPS or the Board) for several years has failed to provide DH with the Free Appropriate Public Education (FAPE) which the Individuals With Disabilities Act (IDEA), 20 U.S.C. § 1400, *et seq.*, requires the Board to provide to her.

    In this case, the plaintiff is DH's father and the school year involved is 2009-10. He appeals the decision of the State Level Review Officer (SLRO) that found, in rejecting plaintiff's claims of

---

[1] *Horen v. Board*, — F. Supp. 2d —, 2013 WL 3070774 (N.D. Ohio); *Horen v. Board*, — F. Supp. 2d —, 2013 WL 2403999 (N.D. Ohio); *Horen v. Board*, 2012 WL 3808902 (N.D.Ohio); *Horen v. Board*, 655 F. Supp. 2d 794 (N.D. Ohio 2009); *Horen v. Board*, 594 F. Supp. 2d 833 (N.D. Ohio 2008); *Horen v. Board*, 2008 WL 5156614 (N.D. Ohio); *D.H. ex. rel. Horen v. Board*, 2008 WL 4457897 (N.D. Ohio); *Horen v. Board*, 568 F.Supp.2d 850 (N.D. Ohio 2008); *Horen v. Board*, 2008 WL 339458 (N.D. Ohio); *see also Board v. Horen*, 2010 WL 3522373 (N.D. Ohio).

various violations by TPS of the IDEA, that either the record did not support those claims or the doctrine of *res judicata* barred their consideration. (Doc. 17).

Pending is the Board's motion for summary judgment. (Doc. 14). For the reasons that follow, I grant the motion.

**Background**

On March 29, 2009, Thom Billau, then Director of Student Services at TPS, sent a letter to the Horens stating he wanted to schedule an Individual Educational Plan (IEP) meeting. He also stated TPS had a classroom assignment for DH at her "stay-put" placement, EduCare. Mr. Billau's letter also stated:

> To facilitate discussion, I have previously forwarded you a copy of a PROPOSED DRAFT IEP . . . If you would like to receive another copy, please contact my office. As the school staff have not had the opportunity to observe [DH] during the past two school years . . . If you have updated information regarding [DH]'s present levels of performance, please forward any current information.
>
> Also, I had notified you in September 2008 that we were approaching the due date for [DH]'s re-evaluation. A current evaluation is essential to development of a new IEP. I am enclosing a form requesting your consent to re-evaluate [DH].
>
> I am also enclosing a Parent Invitation to a meeting. <u>If the date or time on the invitation are not workable for you, please contact me with your suggested dates and times for a meeting.</u> At the meeting we would like to discuss conducting a reevaluation, as well as any information that may be helpful in subsequently developing a new IEP.
>
> \* \* \*
>
> Meanwhile, please advise when [DH] will resume attending school.

(Doc. 14, at 2) (emphasis in original letter).

Instead of responding to Mr. Billau's letter, on April 6, 2009, plaintiff sent a letter to TPS Superintendent John Foley, stating:

2

> This letter is in response to **another** correspondence sent to our house . . . scheduling a meeting for April 7 from Thorn Billau. Thank you for more evidence of TPS continuing to deny [DH], a free appropriate public education.
>
> Please stop sending correspondence to our home . . No matter how many letters TPS sends, the facts will not change until TPS does what it is required to do. Nor will we change our stance. As such, **we object to any meetings regarding our daughter being conducted without our full participation until such time as TPS complies not only with the IDEA, but with the hearing officer's rulings as well**.
>
> * * *
>
> As to Mr. Billau's repetitive query as to when [DH] will resume attending EduCare, I would again refer you to past correspondence and pending litigation that fully addresses the issue. We will continue [sic] any further correspondence addressing the same issues as harassment. Stop it.

(Doc 17, at 10-11) (emphasis in original).

DH's parents did not attend the April 7, 2009, IEP team meeting suggested in Mr. Billau's letter. They did not propose an alternative date. They did not agree to an evaluation of DH.

Instead, on June 3, 2009, plaintiff sent another letter to Superintendent Foley, stating:

> Mr. Billau is useless and incompetent and we believe getting kick-backs from the attorneys to keep fighting the Horens. Maybe you are too ... We will continue our letter-writing campaign, and informing the public especially during levy time, about TPS's practices.

(Doc. 14, at 3).

The June 3rd letter concluded with a reference to plaintiff's April letter:

> Several months ago we asked you to stop sending letters to our home until such time as TPS stops ignoring our requests. We don't know what you are hiding, Mr. Foley, or what you are afraid of, but what we are looking forward to is a response to our requests.

(*Id.*).

3

No further communication took place between the parties as to the 2009-10 school year. About two years afterwards, plaintiff filed his administrative due process complaint. He filed this suit on August 30, 2012, more than three years after his last communication with the Board.

At the administrative hearing before the Initial Hearing Officer (IHO), plaintiff alleged:

1. The District failed to comply with the provisions of the IDEA as it relates to child find.

2. The District failed to have an IEP in place by the first day of school.

3. The District failed to have an IEP in place throughout the entire 2009-2010 school year.

4. The District failed to provide Child any services during the pendency of other claims.

5. The District provided the parents the option of two inappropriate locations, one as determined by a previous hearing officer and the court, and the second, a location operating without certification or license by the ODE in violation of the Ohio Revised Code (ORC), and where the District permitted medical students access without parental knowledge or permission.

6. The District failed to respond to inquiries the Parents had regarding conducting evaluations.

7. The District failed to conduct any IEP meetings for the 2009-2010 school year.

(Doc. 17, at 6-7).

The Board stipulated to the factual accuracy of assertions 2, 3, and 7 (*i.e.,* that there had been no IEP before the first day of school or throughout the 2009-10 school year and no IEP meetings had occurred during that school year).

The IHO found the plaintiff's complaint to be without merit. In doing so, he stated:

1. TPS made sufficient efforts to comply with child find, but the Horens' letters communicated a desire to have no further communication with TPS.

> 2. The issue of whether EduCare was an appropriate location has been decided and is res judicata. Further, given that DH has not been in school since 2006 and the ongoing litigation, TPS acted appropriately in stating it was maintaining a placement for DH at EduCare.
>
> 3. Plaintiffs April 2009 letter effectively cut off communication with TPS, and Plaintiffs June 2009 letter did not request any specific evaluation or testing information.

(*See* Doc. 14, at 4).

Though the IHO also found that TPS should have provided an IEP for DH, he also found that the parents' "actions impeded the process necessary for the establishment of an IEP." (*Id.* at 5). The IHO ordered TPS "to have an IEP completed between now and the beginning of the next school year." He also ordered the Horens to "cooperate and provide consent for the reevaluation." (*Id.*).

Plaintiff appealed to the State Level Review Officer (SLRO), who likewise found the complaint to be meritless.

In a thirty-page decision which encompassed the plaintiff's multiple objections to the IHO's decision, the SLRO, affirming the IHO's decision, concluded:

> In conclusion, the District did not offer Student a FAPE during the 2009-2010 school year because an IEP was not drawn up by the District without the involvement of Parents if they chose not to participate, but Student could not be provided services pursuant to such IEP unless Parents brought her to school. Parents are not entitled to any compensation for the denial of FAPE because *they contributed in great part to the denial of FAPE by refusing to consent to the re-evaluation, refusing to attend an evaluation or IEP meeting and withholding their daughter from school.* The IHO decision is affirmed.

(Doc. 17, at 30) (emphasis supplied).

In his appeal from these findings and the SLRO's decision, plaintiff claims, *inter alia*: 1) for him to have provided informed consent to the pre-IEP meeting evaluation, the Board was obligated to inform him in advance of what the evaluation would involve and who would be participating in the evaluation; 2) because the Board did not provide that information, he was justified in not

5

responding to Billau's request to attend an IEP meeting;3) the Board was at fault for not providing the IEP; and 4) the Board violated the "child-find" provision of the IDEA.

There is no merit to any of these contentions or the other assertions and contentions which plaintiff makes in response to the Board's motion for summary judgment.

## Standard of Review

The standard of review for administrative appeals under IDEA is a "modified de novo review." As stated in *Burilovich v. Bd. of Educ. of Lincoln Consolo Schools*, 208 F.3d 560, 567 (6th Cir. 2000):

> we hold that administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both. A court should defer to the administrative findings only when educational expertise is relevant to those findings and the decision is reasonable. By so deferring, "due weight" will have been given to the state administrative proceedings. We also reiterate that, when there is a conflict between the holdings of the local and state hearing officers, the court must defer to the state hearing officer's decision in reviewing the record on appeal.

The hearing officers' factual findings as to the cause for the failure of TPS to provide DH with an IEP, and thus, a FAPE for the 2009-10 school year clearly pass muster under this test. Indeed, the record clearly and convincingly shows that the administrative factual findings are well-founded.

## Discussion

### 1. Issues as to Which There is or Can be no Dispute

There is no dispute that DH is entitled to the benefits of the IDEA, include a free appropriate public education. There is also no dispute that she has not attended TPS since 2006.

As a result of my prior decisions, the plaintiff cannot, as a matter of law under the doctrine of *res judicata*, seek to relitigate certain other facts. Principal among these, for purposes of this case, are: 1) DH's parents, not TPS, withdrew DH from TPS in 2006; and 2) her planned placement for the 2006-07 school year at EduCare, a child care center, was appropriate. *Horen v. Board of Educ. of City of Toledo Public School Dist.*, — F. Supp. 2d —, —, 2013 WL 2403999, *1 (N.D. Ohio 2013) (finding "that DH's parents are solely responsible for DH's failure to attend school . . . [and] as of the beginning of the 2006–07 school term, EduCare was an appropriate placement.").[2]

Both during the state administrative process and in this court, the plaintiff fails to acknowledge the *res judicata* effect of these findings. Instead, he bases much of his contentions on his view that DH had not attended school because TPS withdrew her and EduCare was not a proper placement.

The doctrine of *res judicata* is an absolute bar to any effort to re-litigate the issues of who was responsible for DH not attending school during the 2006-07 school year and thereafter and whether EduCare was a proper placement.[3] *See, e.g., Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 (1996) ("The doctrine of res judicata rests at bottom upon the ground that the party to be

---

[2] As TPS's reply brief points out, the *res judicata* effect of the finding as to EduCare's suitability in 2006-07 does not preclude revisiting the question of proper placement in the course of developing a new IEP. (Doing so depends, of course, on the parents' willingness to participate in that process). *Res judicata* simply bars plaintiff from once again trying to relitigate that issue here or in the administrative process.

[3] Similarly, plaintiff cannot claim that the parents have been justified in not enrolling DH in the TPS because the Board withdrew her in 2006 and EduCare was not a proper placement. The *res judicata* effect of this court's findings preclude relying on a view contrary to those findings to argue for relief in this case or any other under the IDEA.

7

affected, . . ., has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction.") (citations omitted).

To the extent that the SLRO based her decision on the *res judicata* effect of prior adjudications involving DH, I affirm that determination without further discussion, as her decision to do so was correct.

This disposes of the contentions plaintiff raises in ¶¶ 44 (whether TPS withdrew DH), 46 (whether plaintiff attempted to relitigate settled issues), and 53 (adequacy of EduCare). *See generally Horen, supra*.

### 2. Other Issues

#### a. Impeding the IEP Process

As already mentioned, I conclude that the record clearly and convincingly supports the findings that the parents' actions caused the 2009-10 IEP process neither to begin nor be completed. The hearing officers, therefore, properly found no fault with TPS with regard to the lack of an IEP.

The cornerstone of this finding is the correspondence, quoted above, between Billau, plaintiff, and Superintendent Foley. A more blatant refusal to participate in the process is hardly conceivable. Plaintiff told TPS to "Stop it" and ceased all meaningful communication about an IEP for the 2009-10 school year. Under these circumstances the Board can not be faulted for not trying to go further to meet its obligations to DH.

Plaintiff makes much of the Board's putative failure to provide him with details about the preliminary evaluation, which is an essential part of preparing an IEP.[4] Unless the parties –

---

[4] In this case, the evaluation was especially crucial, as the parents had kept DH from the TPS for three years.

including, of course, the Board, can ascertain a child's circumstances and needs, it is impossible to prepare an individualized plan which is suited to and meets those needs.

Most fundamentally, the record contains no request by the plaintiff before he unilaterally shut down communication for that information from the Board. Moreover, plaintiff points to no provision in the IDEA or caselaw which entitled him to know the details of the evaluation process before he would participate at all in the development of an IEP. As with other aspects of that development, the IDEA envisions a cooperative effort, whereby the parties meet, propose, respond, consider, and go from there. To be sure, agreement does not always occur, but that is why the process of administrative review exists.

Plaintiff faults how TPS and the hearing officers interpreted his letters to Superintendent Foley and subsequent silence. In his view, apparently, his correspondence was, in effect, part of the initial process of developing the format for the evaluation and IEP and thus should have led to further discussion. That the Board and hearing officers understandably read his statements as he wrote them – *i.e.,* as clearly expressing an intent not to participate in the process – is well supported by the letters themselves.[5]

This disposes of the contentions in ¶¶ 45, 47, and 48.

Plaintiff claims TPS had to file (and, implicitly, prevail on) its own due process complaint before the hearing officers could absolve it of responsibility for not preparing the IEP. The officers and I disagree: nothing in the IDEA compels a party from protecting its interests in whatever procedural manner it desires. Until plaintiff filed the instant suit, nothing called on TPS to do

---

[5] Plaintiff's opposition, by pointing to a series of letters from the Board cancelling IEP meetings, seeks to impose responsibility for the lack of an IEP on the Board. Those letters, sent in 2007, have nothing to do with the 2009-10 year at issue here.


anything after the SLRO issued her decision. Once plaintiff filed his complaint in this case, TPS could, and properly has, availed itself of Fed. R. Civ. P. 56. *Cf. Horen, supra,* — F. Supp. 2d at —, 2013 WL 240399, *8 (overruling plaintiff's challenge in that case to the ability of TPS to present a defense).

This disposes of ¶ 52.

Plaintiff claims to be entitled to costs he incurred in providing DH an education during the 2009-10 school year. The parents having been at fault for having to do so, the hearing officers' rejection of this contention was well-founded.

This disposes of ¶ 54.

There is, therefore, more than ample evidence in the record to sustain the findings of the IHO and SLRO that the parents impeded the development of the 2009-10 IEP, and that they, not TPS, were responsible for the lack of the IEP for that school year.

### b. Prior Written Notice

Plaintiff claims the hearing officers failed to rule on his contention that TPS failed to provide prior written notice when asked to do so by the Horens. There is no merit to this contention because the Board met whatever requirements exist in that regard.

Under 34 CFR §300.503(a), a school district must give parents prior written notice when the district either proposes or refuses to begin or change the identification, evaluation, or educational placement of or the provision of a FAPE to the child. The IDEA also states that if the district has not sent a prior written notice regarding the subject matter contained in a parent's due process complaint, the school must send the parent a response that includes:

> (a) An explanation of why the school district of residence proposed or refused to take the action raised in the due process complaint;

>(b) A description of other options that the IEP team considered and the reasons why those options were rejected;
>
>(c) A description of each evaluation procedure, assessment, record, or report the school district of residence used as the basis for the proposed or refused action; and
>
>(d) A description of the other factors that are relevant to the school district of residence's proposed or refused action.

O.A.C. § 3301-51-05(K)(8)(f)(i)(a)-(d).

Plaintiff claims not to have received such notice for the 2009-10 school year. Nor, he claims did it provide "a response" to the due process complaint that addressed the above four issues.

Plaintiff is mistaken because, as with the other aspects of the IEP process, plaintiff's own actions precluded development of the IEP. Plaintiff cannot fault TPS for not sending notices that otherwise might have been required as the process progressed.

With respect to the response mandated by § 3301-51-05(K)(8)(f)(i)(a)-(d), I agree with the Board that its response to the parents' due process complaint satisfied, to the extent necessary, the regulation's four requirements.

As to subsection (a), the Board's response, which included the correspondence quote above, sufficiently responded to, explained, and justified the Board's actions *vis-a-vis* the 2009-10 IEP and FAPE.

I likewise agree with the Board that subsections (b) and (c) are not applicable, as, due to the shut down in communications, there was no need for a description of either "other options" or "each evaluation procedure, assessment, record, or report the school district of residence used as the basis for the proposed or refused action." Due to plaintiff's refusal to respond, much less cooperate and work with the Board, the process never got to either of those points.

The same is true with regard to subsection (d), which requires "a description of the other factors that are relevant to the school district's proposed or refused action." Nothing, due to the plaintiff's unilateral refusal not to proceed with the initial process, got to that point.

The Board's response to the allegations in the due process complaint was entirely sufficient.

This disposes of ¶ 49.

### c. Misrepresentation of Cosart's Testimony

The hearing officers found that the plaintiff misrepresented testimony by Charlotte Cosart, current Director of Student Services at TPS and involved in the effort to work with the parents.

Though addressing this issue is not necessary, as it is entirely immaterial to the decision of either hearing officer, I agree with them that the portion the plaintiff presented was out of context.

Plaintiff's presentation at the hearing pointed out that he had asked the following question and Ms. Cosart gave the indicated response:

Q. . . . Did you have any plans to develop a plan for the 2009/2010 school year?

A  No.

Literally, that is correct. But it is misleading when presented on its own, unaccompanied by the preceding colloquy:

Q. Okay. So then you were trying to get her back to the stay put placement?

A I was trying to get her back into school where an IEP team would have made that decision.

Q. Well, how could she go to school without an IEP?

A I believe that in the correspondences that I had with you I indicated that an interim IEP could be established to direct some services for [DH] as she was in school, and we developed with parental input a planning form for an ETR so that following the ETR we could develop a really good plan for her IEP.

> Q. And that was for the 2009/2010 school year?
>
> A No.
>
> Q. You mentioned something about developing a plan. Did you have any plans to develop a plan for the 2009/2010 school year?
>
> A No.

(*See* Doc. 14, at 17).

To the extent TPS did not have an IEP for 2009 (which is not disputed), that failing, to repeat, was due entirely to plaintiff's own actions in not participating the development of a plan. To suggest, as plaintiff did by pointing solely to the last part of the line of questioning, that TPS was either unwilling to develop an IEP or deficient in its efforts to do so, does, in fact, give the last question a meaning that it does not have in context.

The hearing officers did not err when they criticized plaintiff for his conduct – though neither it nor the criticism played any material role in the administrative decisions.

This disposes of ¶ 50.

### d. Order to TPS to Prepare an IEP and to Parents to Cooperate

The IHO ordered TPS "to have an IEP completed between now and the beginning of the next school year, along with whatever further evaluations as are needed." In addition, the IHO ordered the parents to "cooperate and provide consent for the reevaluation." (*See* Doc. 14, at 22).

Plaintiff claims there was no evidentiary foundation for the IHO to impose this mandate.

An evidentiary basis for attempting to get the parties to work together in the interests of DH exists. The IHO could properly infer from the record in this case that the parents might be inclined to continue to refuse to work with TPS. In addition he could take judicial notice of the opinions of

this court and the decisions from prior agency hearings as further evidence of the parents' unwillingness to work with the Board.

On doing so, he could properly exercise his discretion to seek to compel the parties to do that which has not been done since 2006 – see to it that DH enjoys her right to a FAPE.

Indeed, the law allows for such forward-looking relief under the IDEA. "Under the theory of 'compensatory education,' courts and hearing officers may award 'educational services . . . to be provided prospectively to compensate for a past deficient program.'" *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (quoting *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003); *see also B.B. v. West Clermont Bd. of Educ.*, 788 F. Supp. 2d 682, 701 (S.D. Ohio 2011) (compensatory education includes prospective relief).

In any event, the order does not contravene any provision of the IDEA; indeed, it seeks to fulfill the statute's fundamental purposes. If the parents fail again to work cooperatively with the Board, that will again render unattainable its ability to fulfill the mandate of creating an IEP and providing a FAPE.

This disposes of ¶ 51.

### e. Refusal to Accept Untimely Brief

Plaintiff submitted a post-hearing brief to the SLRO two days before she was to issue her decision. She declined to let him file it. Contrary to plaintiff's claim, her doing so did not deprive him of his due process right to a fair hearing.

Aside from the brief's untimeliness, plaintiff did not serve a copy on the Board's counsel. Even if he had, there was insufficient time for a response.

In any event, had the plaintiff sought, as the SLRO had offered, an extension of the deadline so that he could file his brief, she would have given it to him. But he thrice refused to ask for an extension. So he has only has himself to blame for the SLRO's refusal to allow him to file his brief.

Instead of being deprived of due process, the plaintiff sought to deny it to the Board. There was no error in the SLRO's refusl to let him do so.

This disposes of ¶ 42.[6]

### f. TPS Did Not Violate the "Child-Find" Requirement

IDEA's "child-find" provisions require schools to "adopt and implement written policies and procedures" that ensure all children with disabilities residing within the district are identified, located, and evaluated. 34 C.F.R. §300.111(a)(1); OAC § 3301-51-03(A); *Bd. of Educ. of Fayette County, Ky. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007). A school district violates the "child-find" provisions of the IDEA only if "school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." *Id.*

Plaintiff claims TPS did not complete its "child-find" obligation because it did not "locate DH" or evaluate her. There is no merit to this contention.

The Board knew about DH and her need for a FAPE. It knew where she was – with her parents. To be sure, it did not evaluate DH, and has not done so since 2006. But the fault was not its; the fault is her parents'.

---

[6] TPS calls attention to my decision in *Horen v. Board of Educ. of City of Toledo Public School Dist.*, 2012 WL 3808902, *2, n.3 (N.D. Ohio), in which I stated, "[t]he SLRO must afford the parties some opportunity for argument; it is at her discretion how that argument takes place." The SLRO's actions *vis-a-vis* plaintiff's brief manifests an exercise of appropriate discretion.

15

Moreover, plaintiff does not claim that the Board has failed, as §300.111(a)(1), expressly requires, to adopt and implement written procedures to accomplish the required actions.

**Conclusion**

There is no merit to any part of the plaintiff's challenge to the SLRO's decision. It is, accordingly,

ORDERED THAT defendant's motion for summary judgment (Doc. 14) be, and the same hereby is granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge